UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jeffrey Croucher

    v.                                      Civil No. 16-cv-371-LM
                                          Opinion No. 2019 DNH 156

Atrium Medical Corporation,
Maquet Cardiovascular US
Sales, LLC, and Getinge AB


In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)

O R D E R

Jeffrey Croucher brings suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims, breach of warranty claims, and violation of consumer protection laws. Croucher's suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. The case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss on a variety of grounds.[1] Croucher objects.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**BACKGROUND**

Croucher had a surgical procedure to repair a hernia on May 6, 2010. The procedure was done at Manchester Memorial Hospital in Manchester, Kentucky. The surgeon used a piece of C-QUR mesh for the repair. In September 2010, Croucher had another procedure to remove the mesh. During the procedure, the surgeon found a large amount of fluid within the abdomen as well as inflammatory adhesions, and the mesh was discolored, bunched, and infected. A different mesh product was used to repair the hernia. Two months later, Croucher had another infection at the mesh site which required another surgery.

In March 2012, Croucher again had abdominal pain with a swollen area. He had exploratory surgery for a large subcutaneous seroma cavity and evacuation of fluid. He was then treated with antibiotics, pain medication, and IV fluids. Later in March, Croucher had another surgery to evacuate and drain fluid from the seroma. In April, Croucher had further evacuation of fluid and placement of JP drains. He continued to experience problems with fluid collection

in the seroma and was seen by physicians because of it. In July 2013, more fluid was drained. In January 2015, Croucher had surgery to remove all mesh and address the chronic infection.

Atrium, which designed, marketed, and sold the C-QUR mesh that was implanted into Croucher, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Croucher alleges that Maquet and Getinge are responsible for Atrium's actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Croucher alleges, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR mesh was safe and effective for that purpose. Croucher further alleges that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Croucher alleges claims of negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability and fitness of purpose (Count VI), and violation of consumer protection laws (Count VII). He seeks compensatory and enhanced damages.

## DISCUSSION

Defendants Atrium and Maquet move to dismiss Croucher's claims, contending that the product liability and breach of warranty claims, Counts I – VI, are barred by the applicable

statute of limitations. They also contend that Kentucky law applies to the liability portion of all of Croucher's claims, and that some claims are inadequately pleaded under Kentucky law. Croucher objects, arguing that his claims are not time-barred, that New Hampshire law applies, and that his claims are sufficiently pleaded.

I. Statute of Limitations

The parties agree that New Hampshire's statutes of limitations, as procedural rules of the forum state, apply in this case. See TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at *3 (D.N.H. Sept. 29, 2015) (discussing circumstances under which it is appropriate for this court, sitting in diversity, to apply New Hampshire's statute of limitations). They further agree that Croucher's product liability claims, Counts I through IV, are governed by RSA 508:4, I, and the breach of warranty claims, Counts V and VI, are governed by RSA 382-A:2-725.

    A. Product Liability Claims

Under New Hampshire law, "[e]xcept as otherwise provided by law, all personal actions, . . . may be brought only within 3 years of the act or omission complained of." RSA 508:4, I. An exception to that time limit exists

> when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I. If the defendant meets the initial burden of showing that the action was not brought within three years of the underlying events, to avoid dismissal, the plaintiff must show

4

that the discovery rule or another tolling doctrine, such as the fraudulent concealment rule, applies. Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 712 (2010).

"[T]he fraudulent concealment rule states that when facts essential to the cause of action are fraudulently concealed, the statute of limitations is tolled until the plaintiff has discovered such facts or could have done so in the exercise of reasonable diligence." Bricker v. Putnam, 128 N.H. 162, 165 (1986). The equitable purpose of the fraudulent concealment rule in tolling the limitations period is to prevent the wrongdoer from receiving and keeping the benefit of its fraudulent conduct. Lakeman v. LaFrance, 102 N.H. 300, 303 (1959). Similarly, the doctrine of equitable tolling delays the limitations deadline when the plaintiff "was prevented in some extraordinary way from exercising his or her rights." Portsmouth Country Club v. Town of Greenland, 152 N.H. 617, 623 (2005).

Defendants argue that Croucher's product liability claims are time-barred because the mesh was implanted in May 2010, which is more than six years before he brought this action in August 2016. In response, Croucher invokes the protection of the discovery rule. He contends, relying on Raymond v. Eli Lilly & Co., 117 N.H. 164, 176-77 (1977), that he did not and could not discover the causal connection between the C-QUR mesh and his injury until long after implantation. He represents that he did not realize the connection until he saw a television advertisement in February 2016 about potential claims relating to hernia mesh.

"The district court may grant a motion to dismiss based on a defendant's affirmative defense of a statute of limitations when the pleader's allegations leave no doubt that an asserted claim is time-barred." DeGrandis v. Children's Hosp. Boston, 806 F.3d 13, 17 (1st Cir. 2015) (internal quotation marks omitted); see also Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 17 (1st Cir. 2004). Taking Croucher's allegations in the light most favorable to him and resolving

5

reasonable inferences in his favor, the allegations are sufficient to preclude dismissal of the product liability claims as time-barred at this stage of the litigation. If, as the case develops through discovery, defendants find facts that support the statute-of-limitations defense, they may raise that defense at an appropriate time, such as in a motion for summary judgment.

B. Breach of Warranty Claims

Croucher alleges both breach of express warranty (Count V) and breach of implied warranties (Count VI) claims. The parties agree that RSA 382-A:2-725 provides the applicable statute of limitations for the breach of warranty claims.

RSA 382-A:2-725(1) provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." RSA 382-A:2-725(2). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Id. The discovery rule for future performance does not apply to implied warranties. Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 853 (2005). While equitable tolling and the fraudulent concealment rule may extend the limitation period for purposes of a claim of breach of an express warranty, they do not apply to breach of implied warranties claims. Begley v. Windsor Surry Co., Civ. No. 17-cv-317-LM, 2018 WL 1401796, at *8 (D.N.H. Mar. 19, 2018) (relying on Lockheed Martin Corp. v. RFI Supply, Inc. 440 F.3d 549, 556-57 (1st Cir. 2006)).

Defendants assert that Croucher's breach of warranty claims accrued when the mesh product was implanted in May 2010, which is more than four years before Croucher brought suit in August 2016. Croucher contends that defendants' warranties extended to future performance of the mesh and, therefore, the accrual date is extended to when the breach of warranty was discovered or should have been discovered. He also argues that the time is extended because defendants fraudulently concealed the breach of warranty. As is noted above, he contends that he did not realize the connection between the C-QUR mesh and his injuries until February 2016, which is less than four years before he brought suit. In their reply, defendants argue that the future performance extension does not apply because no such explicit warranty was made and that the future performance extension does not apply to breach of implied warranty claims.

As stated above, neither the discovery rule for future performance nor the fraudulent concealment rule applies to breach of implied warranty claims. Therefore, Croucher's claim for breach of implied warranties, Count VI, accrued in May 2010, when the mesh was implanted. Because Croucher brought this suit more than four years later, Count VI is dismissed as untimely.

The discovery rule for warranties of future performance would apply to Croucher's breach of express warranty claim if defendants' express language warranted the performance of the mesh for a future period of time or permanently. Kelleher, 152 N.H. at 828. At this stage of the litigation, the court is limited to the allegations in Croucher's amended complaint and does not have defendants' actual advertising or marketing materials. Croucher alleges that defendants warranted that the mesh product was safe and fit for its intended purpose, which was to be permanently implanted into patients. As such, the court may make the reasonable inference that

in advertising, marketing, and otherwise promoting C-QUR mesh, defendants expressly warranted the future performance of the mesh product after implant.

Croucher states that he did not learn of the connection between the C-QUR mesh and his injury until February 2016. The complaint read in the light most favorable to Croucher does not show beyond doubt that Croucher's breach of express warranty claim is time-barred.[2] [DeGrandis, 806 F.3d at 17](). Defendants' statute-of-limitations defense to this claim is better raised in a properly supported motion for summary judgment.

II. Choice of Law

Defendants contend that Kentucky has an interest in the case because Croucher is a resident of the state and his alleged injury occurred there. They further contend that a choice-of-law analysis is necessary because Kentucky's product liability law conflicts with New Hampshire's product liability law and that, under New Hampshire's choice-of-law principles, Kentucky law governs. Croucher argues that a choice-of-law analysis is premature because additional factual development is necessary and that defendants have not sufficiently identified an actual conflict. He further contends that if the court engages in a choice-of-law analysis, New Hampshire law governs.

---

[2] In their reply, defendants argue that even if they made warranties of future performance of the mesh, the warranties ended when the mesh was removed in November 2010, more than four years before Croucher brought suit. Defendants cite no authority and provide no developed argument to show that removal of the mesh alone caused the breach of express warranty claim to accrue in the context of the discovery rule. Therefore, the court does not address the merits of that theory.

8

A. <u>Timing of Choice of Law</u>

Croucher argues that a choice of law is premature at this stage of the litigation. He cites cases that address whether the record was sufficiently developed to allow a choice-of-law determination at an early stage of a case. Croucher asserts that "case-specific depositions have not yet taken place and very little case-specific written discovery has taken place." Doc. no. 181 at 16.

Although the parties have not engaged in intensive fact discovery, Croucher does not explain what specific information is lacking that is necessary for the choice-of-law analysis that can be obtained only through discovery. The locations of where defendants manufactured the allegedly defective products and where Croucher had his surgeries are not in dispute. Therefore, Croucher has not shown that the choice-of-law determination is premature, and the court employs the analysis.

B. <u>Standard</u>

The parties agree that New Hampshire choice-of-law principles govern the choice of law in this bellwether case. <u>See, e.g.</u>, Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000). An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v.

Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

### C. Actual Conflict

New Hampshire and Kentucky are interested states in this case. Defendants, who bear the burden to show that Kentucky law actually conflicts with New Hampshire law, assert that unlike New Hampshire, Kentucky requires proof of a feasible alternative design to support a design defect claim. They argue that, therefore, the court must engage in a choice-of-law analysis.

First, the court notes that defendants acknowledge that under the doctrine of dépeçage, each legal issue is considered separately. See Putnam Resources v. Pateman, 958 F.2d 448, 465 (1st Cir. 1992); Lacaillade v. Loignon Champ-Carr, Inc., No. 10-cv-68-JD, 2011 WL 4738654, at *1 (D.N.H. Oct. 7, 2011). Here, the legal standards for Croucher's claims require different elements of proof. Therefore, dépeçage requires the court to consider the choice-of-law question separately for each claim. Because defendants do not address or attempt to identify an actual conflict with respect to New Hampshire and Kentucky law as to Croucher's claims other than his design defect claim, New Hampshire law applies to the liability portion of those claims. See Aftokinito, 2010 WL 3168295, at *3.

With regard to Croucher's design defect claim in Count II, defendants have not carried their burden to show an actual conflict. Although they show that certain differences exist

10

between New Hampshire and Kentucky law as to a design defect claim, they fail to show that Croucher could not allege facts that would satisfy the standard imposed by Kentucky law.[3] Because defendants have not shown that an actual conflict exists between New Hampshire and Kentucky law for purposes of Croucher's claims in this case, no choice of law is necessary, and the court will apply New Hampshire law to the liability portion of Croucher's claims. See Aftokinito, 2010 WL 3168295, at *3.

III. Merits of the Claims

Defendants move to dismiss Croucher's strict liability claim for manufacturing defect, his breach of warranty claims, and his claim for violation of consumer protection laws under Kentucky law. Because New Hampshire law governs the claims, defendants' arguments are not relevant.[4]

---

[3] Indeed, although defendants move to dismiss some of Croucher's claims on the merits based on Kentucky law, they do not challenge his design defect claim based on a failure to allege a reasonable alternative design.

[4] In the section of their memorandum in support of their motion to dismiss dedicated to Croucher's claim for violation of consumer protection laws, Count VII, defendants focus on Kentucky law. They include a single sentence at the conclusion of that section regarding New Hampshire law, however, stating that Croucher "has also failed to sufficiently identify 'unfair and deceptive' conduct in violation of NHCPA." Doc. no. 177-1 at 14. To the extent defendants seek dismissal of Croucher's claim in Count VII based on New Hampshire law, their motion is denied. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . .").

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 177) is granted as to Count VI and is otherwise denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 19, 2019

cc: Counsel of Record